**Abdou Elsaid TAGELDIN, Petitioner,**

v.

**ATTORNEY GENERAL USA.**

No. 03–4285.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Nov. 18, 2004.

Decided Dec. 1, 2004.

Melvin R. Solomon, Parsekian & Solomon, Hackensack, NJ, for Petitioner.

Uglas E. Ginsburg, Lyle D. Jentzer, United States Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before ROTH, SMITH and BECKER, Circuit Judges.

OPINION

BECKER, Circuit Judge.

Abdou Elsaid Tageldin petitions for review of a decision of the Board of Immigration (BIA) denying (without opinion) his petition for review of a decision of the Immigration Judge (IJ) to deny his application for asylum, withholding of removal and protection under the Convention Against Torture. For the reasons that follow, we deny the petition.

I.

This is an unusual case. On September 15, 2001, four days after the terrible events of September 11, 2001, the FBI searched the apartment building in Jersey City, New Jersey, in which Tageldin lived

with his wife and two minor children and took him into custody for questioning about the 9/11 attack. Subsequently, Tageldin was turned over to the Immigration and Naturalization Service (INS) who continued to detain him and issued a notice to appear dated September 17, 2001. On October 9, 2001, Tageldin was released from custody on a bond with no opposition from the INS or any other federal law enforcement agency.

Tageldin makes the following contentions:

1. He is a native and citizen of Egypt.

2. He is a Muslim.

3. He was arrested and questioned by the FBI on September 15, 2001, in relation to the terrorist attacks of September 11, 2001.

4. His arrest and detention was documented by the media. More specifically, Tageldin alleges that when he was arrested by the FBI on September 15, 2001, at his home in Jersey City, the news media was there to record the event, and that the *Newark Star Ledger*, a statewide newspaper, ran a photograph of him being escorted handcuffed out of his building by federal agents, which appeared on the front page of the Sunday, September 16, 2001, edition with the headline "The Hunt for the Terrorists" appearing in bold print and all capital letters on the top of the photograph.

5. In the aftermath of September 11, the United States and many of its allies took affirmative steps to arrest and detain suspected terrorists. Egypt was one of the countries which took such steps.

6. His arrest, detention and questioning have become known to the Egyptian authorities and he would be labeled a terrorist by the Egyptian authorities. Such a label would lead to his arrest upon his return to Egypt.

7. It is well established that the Egyptian authorities' treatment of prisoners includes numerous violations of basic human rights including beatings, disappearances, extrajudicial killings, and torture. Such treatment would amount to persecution.

8. The events of September 11, 2001, took place more than one year after his entry into the United States and those were the changed country conditions that led to his filing and untimely application for asylum.

9. Due to Egypt's record of human rights abuse, it is more likely than not that he would be subject to torture upon his return to Egypt.

## II.

Withholding of removal is available only if an alien demonstrates that it is more likely than not that he would be persecuted if deported. The CAT affords relief only if an alien demonstrates that his torture is more likely than not to result from his deportation. 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 208.16(c)(2); *Tarrawally v. Ashcroft*, 338 F.3d 180, 186–88 (3rd Cir.2003).[1] The IJ found that the fact that Tageldin was released

---

1. Whether it is more likely than not that Tageldin would experience persecution or torture if he were returned to Egypt is a factual question reviewable under the substantial evidence standard. *See Mulanga v. Ashcroft*, 349 F.3d 123, 131 (3rd Cir.2003); *see also Chang v. INS*, 119 F.3d 1055, 1065–66 (3rd Cir.1997) (administrative determinations regarding both asylum and withholding of deportation will be reversed "only if a reasonable fact finder would be forced to conclude that [the alien] has shown the requisite fear of persecution"); *Zubeda v. Ashcroft*, 333 F.3d 463, 471 (3rd Cir.2003) (BIA finding that alien was not eligible for protection under Convention Against Torture " 'must be upheld unless the evidence not only supports a contrary conclusion, but compels it' ").

by the FBI demonstrated that the FBI had concluded that he was not involved in terrorist activities. Moreover, the IJ stated: "[I]f the Egyptian government had any concerns about the respondent's activities, ... they would consult U.S. law enforcement officers, if their concerns was based on the respondent's arrest here, and they would be advised that the FBI had no adverse information about the respondent." Concomitantly, the IJ found that Tageldin had not established that his detention was well known in Egypt.

The conclusion that Tageldin had not established that it was well known in Egypt that he was questioned by the FBI is supported by the fact that neither of the two newspaper accounts about the FBI raid in which Tageldin was detained referred to him by name. Neither did the captions on the photograph that accompanied both stories contain his name. Moreover, Tageldin introduced no news reports of his detention published in Egypt, nor any evidence that the two newspaper articles from New Jersey publications that he submitted for the record were available online. The IJ acknowledged Tageldin's testimony that Egyptian television had contacted his wife seeking an interview, but declined to find that this contact established that Tageldin was viewed in Egypt as a possible terrorist. As the IJ commented, this contact could as easily have been motivated by sympathy for Tageldin's detention rather than any belief that he had a connection to terrorist activity. Further, the IJ pointed out that Tageldin's close relatives remaining in Egypt had not been "harmed or questioned or bothered whatsoever" following his detention.

On the basis of these findings, the IJ concluded that Tageldin had not shown a

clear probability that his detention by the FBI would cause him to be viewed as a suspected terrorist by Egyptian authorities. The IJ's conclusion is supported by substantial evidence, *see supra* n. 2. We are thus satisfied that Tageldin has not established that it is more likely than not that he would be persecuted or tortured if he is deported. The petition for review will therefore be denied.[2]

---

**2.** We therefore need not reach the respondent's contention that we lack jurisdiction to review the Board's determination that Tagel-

din failed to satisfy the statutory grounds for an exception to the one-year filing deadline for asylum applications.